**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN FELDER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:11-1139** |
| **v.** | : | **(KANE, C.J.)** |
| | | **(MANNION, M.J.)** |
| **DAVID EBBERT, Warden, and** | : | |
| **J. ZIELINSKI,** | : | |
| **Defendants** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Pending before the court is the defendants' motion to dismiss the plaintiff's complaint or, in the alternative, for summary judgment. (Doc. No. 25). Based upon the court's review of the record, it is recommended that the motion be granted.

By way of relevant background, the plaintiff filed the instant Bivens[1] action on June 15, 2011. (Doc. No. 1). A proper motion for leave to proceed *in forma pauperis* was filed on June 29, 2011, (Doc. No. 5), along with an authorization form, (Doc. No. 6). A financial administrative order was issued on July 8, 2011. (Doc. No. 7).

By order dated July 18, 2011, it was directed that process shall issue. (Doc. No. 8).

On July 22, 2011, the plaintiff filed a notice of voluntary dismissal, (Doc. No. 10), but subsequently sought to reinstate the action on September 12,

---

[1]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

2011, (Doc. No. 15). The court granted the plaintiff's motion and allowed the action to proceed. (Doc. No. 16).

After having been granted extensions of time to respond to the plaintiff's complaint, (Doc. No. 18, Doc. No. 23), on January 17, 2012, the defendants filed the instant motion to dismiss the plaintiff's complaint or, in the alternative, for summary judgment, (Doc. No. 25). A brief in support of the motion was filed on February 21, 2012, (Doc. No. 31), along with a statement of material facts, (Doc. No. 32). The plaintiff filed a brief in opposition to the defendants' motion on March 5, 2012. (Doc. No. 33). On March 15, 2012, the defendants filed a reply brief. (Doc. No. 35).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of a complaint. In deciding a motion to dismiss, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra and providing further guidance on the standard set forth therein).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the
> entry of summary judgment, after adequate time for

3

> discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

4

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

In his complaint, the plaintiff challenges the denial of a pay grade exemption for him. The plaintiff alleges that defendant "J. Zielinski abused her discretion in that she did not have the authority to deny the request for exemption as the applicable program statement requires the warden or S.O.E. make the decision." The plaintiff alleges that the action taken by defendant Zielinski, who is the Assistant Supervisor of Education, was a violation of his due process and equal protection rights.

In conjunction with their motion, the defendants have provided a statement of material facts which provide that the plaintiff is currently serving an aggregated 264-month sentence imposed by the United States District Court for the Eastern District of Pennsylvania on June 9, 2008, for distribution of and possession with intent to distribute cocaine base and marijuana, possession with intent to distribute heroin, and possession of a firearm in furtherance of a drug trafficking crime[2]. The plaintiff's projected release date

___

[2]Although the plaintiff was advised by way of the court's standing practice order, (Doc. No. 3), and the defendants' statement of material facts, (Doc. No. 32), that, pursuant to L.R. 56.1, all facts set forth in the defendants' statement of facts would be deemed admitted unless properly controverted by the plaintiff with references to the record, the plaintiff has failed to file a proper response to the defendants' statement of material facts. Those facts are therefore deemed admitted.

is September 2, 2024, via good conduct time release. The plaintiff has been housed at FCI-Allenwood since July 14, 2008.

The plaintiff was enrolled in the General Educational Development, ("GED)/Literacy Program on July 31, 2008. Since the plaintiff did not have a verified GED or high school diploma, he was required to attend the adult Literacy Program for a minimum of 240 instructional hours or until a GED was achieved, whichever occurred first.

Program Statement 5350.28 provides that an inmate's wages are limited to a pay grade 4 level when the inmate has not met the literacy requirements. The policy further provides that the Supervisor of Education should recommend a pay exemption from the pay grade 4 level for an inmate who completes 480 hours of participation in the Literacy Program unless the inmate is not making an acceptable level of effort. This recommendation goes to the Warden who may, for good cause, exempt inmates on a case-by-case basis from the wage/pay limitation.

At FCI-Allenwood, Education Department staff initiate the paperwork either recommending approval or denial of a pay exemption for an inmate. Once the literacy teacher completes the paperwork, it is forwarded to the Assistant Supervisor of Education, who supervises the entire Education Department at the Allenwood Federal Correctional Complex, which includes USP, FCI and LSCI-Allenwood. The paperwork is then given to the appropriate associate warden to ensure it is given to the warden's office.

6

Since the plaintiff completed 480 hours of the Literacy Program, paperwork recommending denial of a pay exemption was reviewed by defendant Zielinski, Assistant Supervisor of Education, and the Supervisor of Education, who then forwarded the paperwork to the warden. The denial of the pay exemption was due to the plaintiff's lack of effort in the Literacy Program. The literacy teacher and defendant Zielinski counseled the plaintiff on numerous occasions for not being present in the class while the class was in session and for leaving the class early. The plaintiff informed defendant Zielinski that, since he was not scheduled for release until 2024, he was not interested in attaining his GED, just the pay exemption. However, the literacy teacher and defendant Zielinski informed the plaintiff that he was not entitled to the exemption for simply showing up and attending class.

In their motion, the defendants argue that the plaintiff's complaint should be dismissed to the extent that he is attempting to bring the instant action against them in their official capacity. The court agrees.

A federal court is without jurisdiction to entertain a suit for money damages against the United States or its agencies unless sovereign immunity has expressly been waived. United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). The doctrine of sovereign immunity extends to individual officers sued in their official capacity, because an official capacity suit is "only another way of pleading an action against an entity of

which an officer is an agent." Forbes v. Reno, 893 F.Supp. 476 (W.D.Pa. 1995) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). The plaintiff has brought this action pursuant to 28 U.S.C. § 1331. However, this statute does not constitute a waiver of sovereign immunity. Forbes v. Reno, 893 F.Supp. 476, 481 (W.D. Pa. 1995) (citing B.K. Instrument, Inc. v. United States, 715 F.2d 713, 724 (2d Cir. 1983); Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983)). In fact, there is no sovereign immunity waiver for claims of constitutional violations. See F.D.I.C. v. Meyer, 510 U.S. 471 (1994) (holding that Bivens suit may not be maintained against the United States or its agencies).

Thus, the defendants' motion should be granted to the extent it is argued that the plaintiff's claims are barred as against them in their official capacity.

Next, the defendants argue that the plaintiff's complaint should be dismissed with respect to defendant Ebbert for the plaintiff's failure to allege any personal involvement on his behalf.

To state a civil rights claim, the plaintiff  must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997); Maine v. Thiboutot, 448 U.S. 1 (1980)[3].

_____

[3]Bivens actions are the federal counterpart to §1983 claims brought against state officials. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (continued...)

Civil rights liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Moreover, relief cannot be granted against a defendant in a civil rights action based solely on the theory of respondeat superior or the fact that the defendant was the supervisor or superior of the person whose conduct actually deprived the plaintiff of one of his federally protected rights. Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976); Goode v. Rizzo, 506 F.2d 542, 550 (3d Cir. 1974), rev'd on other grounds, Rizzo v. Goode, 423 U.S. 362 (1976).

Here, other than naming defendant Ebbert in the caption of his complaint, the plaintiff has failed to set forth any allegations against him which would indicate that he was personally involved in any alleged violation of the plaintiff's constitutional rights. To the extent that the plaintiff attempts to hold defendant Ebbert liable on the basis of his position as the Warden at FCI-Allenwood, as indicated above, he may not maintain his action on a

---

[3](...continued)
(citing Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials." Schrob v. Catterson, 948 F.2d 1402, 1409 (3d Cir. 1991).

respondeat superior theory of liability. Therefore, the defendants' motion should be granted on this basis as well.

The defendants further argue that the plaintiff has failed to state a claim for equal protection violations against defendant Zielinski. The court agrees that this claim is also subject to dismissal. While the plaintiff generally asserts that he was denied equal protection, he fails to assert that he is a member of a protected class that is treated differently than other individuals. Further, he fails to set forth any allegations as to how he may have been treated differently from other similarly situated prisoners. See Cleberne v. Cleberne Living Ctr., 473 U.S. 432, 440 (1985); Artway v. Attorney General, 81 F.3d 1235, 1267 (3d Cir. 1996); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985). Therefore, the defendants' motion should be granted to the extent that it is argued that the plaintiff has failed to sufficiently set forth an equal protection claim.

The defendants also argue that the plaintiff has failed to set forth sufficient allegations to establish that defendant Zielinski violated his right to due process.

Since the plaintiff is a federal inmate claiming constitutional violations by federal officials, his Fifth Amendment due process rights are implicated. The Fifth Amendment provides that "[n]o personal shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. A due process claim requires a two part analysis. First, a court must

determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000.) Second, if the interest is protected by the due process clause, "the question then becomes what process is due to protect it." Id.

Here, the plaintiff has failed to set forth any allegations in his complaint which would support his bald assertion of a due process violation by defendant Zielinski. Therefore, the defendants's motion should be granted with respect to the plaintiff's due process claim.

Finally, the defendants argue that given the undisputed facts of this case, even if the court were to permit the plaintiff to amend his complaint, he could not show that the defendants' conduct was unlawful and they would therefore be entitled to qualified immunity.

The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity analysis requires the court to consider whether the official's acts violated a constitutional or statutory right and, if so, whether

that right was clearly established at the time of the violation. Id. (citing Yarris v. County of Del., 465 F.3d 129, 140-41 (3d Cir. 2006)). The court has discretion in deciding which of the two parts of the qualified immunity analysis should be addressed first. Id. (quoting Pearson v. Callahan, 555 U.S. 223 (2009)).

When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F.Supp.2d 821, 839-42 (E.D.Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").

Here, as indicated in the undisputed facts, Program Statement 5350.28 provides that an inmate's wages are limited to a pay grade 4 level if the inmate has not met the literacy requirements. In addition, the policy provides that the Supervisor of Education should recommend a pay grade exemption for an inmate who completes 480 hours of participation in the Literacy Program unless the inmate is not making an acceptable level of effort. The recommendation regarding the exemption goes to the Warden who may, for

good cause, exempt inmates on a case-by-case basis.

The plaintiff completed 480 hours of the Literacy Program. However, a recommendation of denial of a pay exemption was reviewed by defendant Zielinski and the Supervisor of Education, who forwarded the paperwork to the Warden. The denial was based upon the plaintiff's lack of effort in the Literacy Program. The plaintiff had been counseled by both the literacy teacher and defendant Zielinski on numerous occasions for not being present in class while the class was in session and for leaving early. The plaintiff was informed that he would not be eligible for the pay exemption for simply showing up and attending class.

Nothing in the above facts establishes that the defendants' violated the plaintiff's constitutional rights or acted unlawfully. Therefore, the defendants are entitled to qualified immunity with respect to the plaintiff's claims.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the defendants' motion to dismiss or, in the alternative, for summary judgment, **(Doc. No. 25)**, be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:  August 16, 2012**

O:\shared\REPORTS\2011 Reports\11-1139-01.wpd